UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CLEVELAND KEALOHAPAUOLE, | Case No.: 21-12237 |
| Plaintiff, | Robert H. Cleland |
| v. | United States District Judge |
| CORRECTIONAL OFFICER ITOE, | Curtis Ivy, Jr. |
| Defendant. | United States Magistrate Judge |
| _____/ | |

# REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 15)

## I.     PROCEDURAL HISTORY

Plaintiff Cleveland Kealohapauole filed this civil rights matter without the assistance of counsel on September 13, 2021, against Michigan Department of Corrections ("MDOC") corrections officer Itoe.  (ECF No. 1).  Plaintiff alleges a violation of the Eighth Amendment to the United States Constitution.  Defendant moved for summary judgment based on failure to exhaust administrative remedies.  (ECF No. 15).  This case was referred to the undersigned for all pretrial matters on October 28, 2020.  (ECF No. 11).

For the reasons below, the undersigned **RECOMMENDS** that the motion for summary judgment be **DENIED**.

## II.    BACKGROUND

A. <u>Complaint Allegations</u>

Plaintiff alleges that he approached officer Itoe several times during the evening of April 12, 2021, asking to be sent to the medical unit for an allergic reaction. He states that he showed Defendant his swollen tongue and throat and told him he was struggling to breath several times, and brought with him a bottle of salsa he believed he was having an allergic reaction to. Even so, Defendant refused to call the medical unit. (ECF No. 1, PageID.4). Around 8:15 pm, Plaintiff approached a different corrections officer and showed him his swollen tongue and stated he was having trouble breathing. That corrections officer immediately called the medical unit. Soon after Plaintiff was taken to medical in a wheelchair and was treated. (*Id.* at PageID.4-5). He alleges Defendant violated the Eighth Amendment by refusing to call medical on his behalf.

B. <u>Instant Motion for Summary Judgment</u>

According to Plaintiff's Step III grievance report, Plaintiff filed two grievances through all three steps of MDOC's grievance process, but only one of those grievances relates to the issues alleged here—JCF-21-04-0686-28e ("JCF-0686").[1] Defendant argues that JCF-0686 does not exhaust administrative remedies because Plaintiff did not timely file his appeal at Step III and because he

---

[1] The other grievance, JCF-21-04-0666-28e, dated April 3, 2021, alleges that food services served chicken that was improperly handled. (ECF No. 15-3, PageID.83-87).

2

did not wait for the Step III response from the prison before filing this lawsuit. (ECF No. 15, PageID.60-61). Defendant also noted that, in addition to being untimely, the Step III appeal was rejected as incomplete for failure to include the Step II grievance. (*Id.* at PageID.53).

In his identical response briefs (ECF Nos. 17, 18), Plaintiff argues that he did not receive a response at Step II. He also states that he mailed his Step III appeal on June 28, 2021, before his deadline to do so. (ECF No. 17, PageID.90-91).

In reply, Defendant insists his motion should be granted because Plaintiff did not address the Step III rejection for failure to include the Step II grievance. Defendant also argues that even if Plaintiff mailed his Step III appeal on June 28, 2021, Plaintiff did not establish that the prison would have received it by the deadline of July 1, 2021. (ECF No. 19, PageID.117). Lastly, he contends that Plaintiff needed to wait to file this lawsuit after he received the Step III response. (*Id.* at PageID.118).

## III.   DISCUSSION

### A.   Standard of Review

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

3

56(a). A fact is material if it might affect the outcome under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a

4

genuine dispute.") (internal quotation marks and citation omitted). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

That Plaintiff is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz [v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a *pro se* litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

5

B.  Exhaustion under the PLRA

Under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e *et seq.*, a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress enacted the provision to address the "outsized share" of prisoner litigation filings and to ensure that "the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 203-04 (2007). Put another way, the purpose of § 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits[.]" *Porter v. Nussle*, 534 U.S. 516, 524 (2002). In addition, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotation marks and citation omitted).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211. The prison's grievance process determines when a prisoner has properly exhausted his or her claim. *Id.* at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim,

6

but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). Even where a prisoner has made some attempts to go through the prison's grievance process, "[t]he plain language of the statute makes exhaustion a precondition to filing an action in federal court." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).

The prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *Id.* (citations omitted); *see also Woodford*, 548 U.S. at 95 ("A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . ."). That said, "the PLRA and Federal Rule of Civil Procedure 15 permit a plaintiff to amend his complaint to add claims that were exhausted after the commencement of the lawsuit, provided that the plaintiff's original complaint contained at least one fully exhausted claim." *Mattox v. Edelman*, 851 F.3d 583, 595 (6th Cir. 2017).

Finally, "inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Instead, failure to exhaust administrative remedies is an affirmative defense under the PLRA. *Id.* As a result, defendants bear the burden of proof on exhaustion. *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012) ("A PLRA defendant bears the burden of proving that a PLRA plaintiff has not exhausted his administrative remedies.").

C. <u>Grievance Procedures at MDOC</u>

Pursuant to Policy Directive 03.02.130, dated March 18, 2019, the administrative remedies available at the MDOC are as follows. First, the inmate must seek to resolve issues with the staff member involved within two business days of learning about a grievable issue. (ECF 15-2, PageID.69, at ¶ Q). If the issues are not resolved within five business days, the inmate may file a Step I grievance using the appropriate form. (*Id.*). If the inmate is dissatisfied with the Step I disposition, or does not receive a response by ten business days after the due date, he or she may file a Step II grievance using the appropriate form. (*Id.* at PageID.71, ¶ DD). Similarly, if the inmate is dissatisfied with the Step II response or does not receive a response by ten business days after the due date, the inmate may file a Step III grievance. (*Id.* at PageID.72, ¶ HH). The matter is fully exhausted after the disposition of the Step III grievance. *Surles*, 678 F.3d at 455 ("A grievant must undertake all steps of the MDOC process for his grievance to be considered fully exhausted.").

D. <u>Analysis</u>

In the view of the undersigned, Defendant's arguments for dismissal of this case lack merit.

Plaintiff's Step III grievance report indicates that the prison received Plaintiff's Step III appeal on August 5, 2021. (ECF No. 15-3, PageID.77). But

8

Plaintiff provided a disbursement authorization form dated June 28, 2021 establishing that he requested that his Step III appeal be mailed that day. (ECF No. 17, PageID.93). This form includes a handwritten notation stating "mailed 6-28-21," but it is unclear if this establishes that the appeal was in fact mailed that date. Reasonable inferences are to be drawn in Plaintiff's favor at this stage; it is reasonable to infer that the Step III appeal was mailed on June 28, 2021. As Defendant points out, however, even if Plaintiff had mailed the appeal on June 28th, it is not clear that it would have been received by July 1, 2021.

According to Defendant, the appeal was due July 1, 2021, ten business days after the prison's Step II response deadline. Yet under MDOC grievance policy, it is not clear that a prisoner's appeal at Step III must be received within ten business days of the Step II response or responses due date. The policy says that to file a Step III appeal, "the grievant must *send* a completed [appeal form] to the Grievance Section within ten business days." (ECF No. 15-2, PageID.72, MDOC Policy Directive 03.02.130, ¶ HH) (emphasis added). The policy does not state that the prison must *receive* the appeal within ten business of the response or response deadline. The record suggests that Plaintiff sent his Step III appeal before his deadline to do so. Thus, it appears Plaintiff exhausted his administrative remedies.

Defendant's remaining two arguments are unavailing.

One of Defendant's arguments relates to the Step III rejection that the appeal was incomplete for failure to include the Step II response in the Step III appeal. This argument is unavailing because, based on the record, the prison did not provide a response at Step II. (*See* ECF No. 15-3). Plaintiff could not have included a response that did not exist. What is more, the prison's grievance policy does not appear to dictate that a Step II response be included in the Step III appeal. Moreover, the prison's reason for rejecting the appeal differs from Defendant's argument. The reason for rejecting the appeal states "Missing Step II *grievance*," not the Step II response. (*Id.* at PageID.78) (emphasis added). If this rejection was intended to indicate that Plaintiff did not include his Step II appeal in his Step III appeal, the rejection is implausible. The Step III appeal form is the same document used to appeal at Step II. (*See id.* at PageID.79). Thus, their forms suggest it would not have been possible to submit the Step III appeal without the Step II appeal included.

The final argument that is that Plaintiff filed this lawsuit too soon. Plaintiff filed his complaint on September 13, 2021. The Step III response form is dated October 21, 2021. (ECF No. 15-3, PageID.78). It is unclear when the prison received Plaintiff's Step III appeal, but the latest date in the record is August 5, 2021, before Plaintiff filed the lawsuit. The MDOC states that it "generally" will

respond to a Step III appeal within 60 days.  (ECF No. 15-2, PageID.72, MDOC Policy Directive 03.02.130 ¶ II).

"Where an inmate files a civil action in federal court before pursuing to completion his available administrative remedies, his complaint (or certain claims therein) must be dismissed for failure to properly exhaust administrative remedies." *Johnson v. Burt*, 2021 WL 3476449, at *3 (W.D. Mich. June 14, 2021) (collecting cases).  That said, "if a prisoner files a lawsuit only after prison officials failed to timely respond to his grievances, dismissal on exhaustion grounds may not, depending on the circumstances, be appropriate." *Id.*; *see also Fulkerson v. Washington*, 2016 WL 7337157, at *2-4 (W.D. Mich., Nov. 3, 2016).  As a practical matter, this makes sense because otherwise

> prison officials could potentially obtain the dismissal of every lawsuit filed by a prisoner who properly complies with the MDOC's grievance policies. MDOC officials would need only ignore every Step III grievance and simply wait until the prisoner eventually files a lawsuit. Once the prisoner files a lawsuit, MDOC officials could then issue a response to the Step III grievance and claim that the lawsuit must be dismissed because it was filed before the inmate completed the administrative process.

*Johnson*, 2021 WL 3476449, at *3.

Plaintiff filed this lawsuit after MDOC's 60 days to respond to the Step III appeal.  Plaintiff was not required to wait indefinitely for a response before suing the defendant.

11

Defendant carries the burden of establishing that there are no questions of material fact and he is entitled to judgment as a matter of law. Defendant has not carried his burden here. Thus, the undersigned suggests that his motion for summary judgment be denied.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendants' motion for summary judgment (ECF No. 15) be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: January 10, 2023                    s/Curtis Ivy, Jr.
                                          Curtis Ivy, Jr.
                                          United States Magistrate Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System or by First Class U.S. mail on January 10, 2023.

                                          s/Kristen MacKay
                                          Case Manager
                                          (810) 341-7850